IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | | |
|---|---|---|
| FALL LINE PATENTS, LLC | § | |
| | § | C.A. No. 5:24-cv-00167-RWS |
| PLAINTIFF, | § | |
| | § | |
| v. | § | |
| | § | |
| 7-ELEVEN, INC., | § | **JURY TRIAL DEMANDED** |
| | § | |
| DEFENDANT. | § | |
| | § | |

## DEFENDANT'S MOTION TO DISMISS

**TABLE OF CONTENTS**

I. STAGE AND NATURE OF PROCEEDINGS ..................................................................... 1

II. SUMMARY OF THE ARGUMENT .................................................................................. 1

III. STATEMENT OF THE ISSUE ......................................................................................... 2

IV. ALLEGATIONS IN THE COMPLAINT .......................................................................... 2

V. LEGAL STANDARDS ...................................................................................................... 4

    A. Legal Standard for Dismissal Pursuant to Federal Rule of Civil Procedure 12(c) .................................................................................................................. 4

    B. The Law of 35 U.S.C. § 101 ................................................................................. 4

VI. ARGUMENT ...................................................................................................................... 5

    A. The '748 Patent is Invalid Under 35 U.S.C. § 101 ............................................... 6

        1. *Alice* Step 1: The '748 Patent is directed to the abstract idea of sending a questionnaire and collecting responses via the Internet ............. 6

        2. *Alice* Step 2: No inventive concept to transform the abstract idea into patent-eligible subject matter is disclosed .......................................... 7

            a. As in *Beteiro,* GPS-Related Limitations Here Are Conventional and Do Not Add Significantly More ....................... 9

            b. Plaintiff's Current Pleading Adds Nothing More to Its Prior Pleading in *Zoe's Kitchen* to Distinguish *Beteiro* ......................... 12

            c. Plaintiff Relies On Specific Distinctions Not Found In The Asserted Claim .............................................................................. 14

            d. Plaintiff Fails To Establish How The Conventional, Routine, and Well-Understood Components Amount To An Unconventional Combination ....................................................... 17

VII. CONCLUSION ................................................................................................................... 19

i

# TABLE OF AUTHORITIES

**Cases**

*Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121 (Fed. Cir. 2018) ........................................................................................................... 9

*AI Visualize, Inc. v. Nuance Commc'ns, Inc.*, No. 1:21-cv-01458-RGA, 2024 U.S. App. LEXIS 8042 (Fed. Cir. Apr. 14, 2024) .......................................... 1, 4

*Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 134 S. Ct. 2347, 189 L. Ed. 2d 296 (2014) ................................................................................................ passim

*Bancorp Servs. L.L.C. v. Sun Life Assur. Co.*, 687 F.3d 1266 (Fed. Cir. 2012) ........................... 4

*BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341 (Fed. Cir. 2016) ............................................................................................. 5

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) .......................................................................................................... 4

*Berkheimer v. HP Inc.*, 881 F.3d 1369 (Fed. Cir. 2018) ............................................... 15

*Beteiro, LLC v. Draftkings Inc.*, 104 F.4th 1350 (Fed. Cir. 2024) ........................................ passim

*Bilski v. Kappos*, 561 U.S. 593, 130 S. Ct. 3218, 177 L. Ed. 2d 792 (2010) ........................... 4, 12

*Brit. Telecomm. PLC v. IAC/InterActive Corp.,* 381 F. Supp. 3d 293 *(D. Del. 2019), aff'd,* 813 F. App'x 584 (Fed. Cir. 2020) ................................... 11, 17

*BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281 (Fed. Cir. 2018) ........................................... 5

*ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759 (Fed. Cir. 2019) ...................................... 2

*CyberSource Corp. v. Retail Decisions, Inc.,* 654 F.3d 1366 (Fed. Cir. 2011) ............................... 6

*DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245 (Fed. Cir. 2014) .................................. 5

*eDekka LLC v. 3Balls.com, Inc.*, No. 2:15-CV-541-JRG, 2015 WL 5579840 (E.D. Tex. Sept. 21, 2015) ....................................................................................... 7

*Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327 (Fed. Cir. 2016) ........................................... 5, 16

*FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089 (Fed. Cir. 2016) .................................... 7

*Fall Line Pat. v. Zoe's Kitchen*, No. 6:18-CV-00407-RWS, 2021 U.S. Dist. LEXIS 251484 (E.D. Tex. 2021) ....................................................................... passim

*Gottschalk v. Benson,* 409 U.S. 63, 93 S. Ct. 253, 34 L. Ed. 2d 273 (1972) ................................. 6

*Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177 (5th Cir. 2007) ...................................................... 4

*Intell. Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1362 ................................................ 17

*Intell. Ventures I LLC v. Symantec Corp.,* 838 F.3d 1307 ............................................................. 18

*Mayo Collaborative Services v. Prometheus Lab'ys, Inc.*, 566 U.S. 66, 132 S. Ct.
    1289, 182 L. Ed. 2d 321 (2012) ......................................................................................... 2, 14

*Miller Mendel, Inc. v. City of Anna*, 598 F. Supp. 3d 486 (E.D. Tex. 2022) ............................. 2, 11

*RecogniCorp, LLC v. Nintendo Co., Ltd.*, 855 F.3d 1322 (Fed. Cir. 2017) ..................................... 4

*SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161 (Fed. Cir. 2018) ............................................. 4, 6

*SiRF Tech., Inc. v. Int'l Trade Comm'n,* 601 F.3d 1319 (Fed. Cir. 2010) .................................... 10

*TLI Communs. LLC v. AV Auto., L.L.C. (In re TLI Communs. LLC Pat. Litig.),*
    823 F.3d 607 (Fed. Cir. 2016) ............................................................................................... 18

*Ultramercial Inc. v. Hulu, LLC*, 772 F.3d 709 (Fed. Cir. 2014) ................................................. 6, 8

*Versata Dev. Grp., Inc. v. SAP Am., Inc.,* 793 F.3d 1306 (Fed. Cir. 2015) .................................. 18

**Statutes**

35 U.S.C. § 101 ..................................................................................................................... 2, 4, 6, 14

**Rules**

Fed. R. Civ. P. 12(b)(6) ........................................................................................................ 1, 2, 4, 19

Fed. R. Civ. P. 6(a)(1) ...................................................................................................................... 14

Fed. R. Civ. P. 6(a)(2) ...................................................................................................................... 14

Fed. R. Civ. P. 6(a)(3) ...................................................................................................................... 14

## I.    STAGE AND NATURE OF PROCEEDINGS

Plaintiff Fall Line Patents, LLC ("Fall Line" or "Plaintiff") filed this lawsuit against Defendant 7-Eleven, Inc. ("Defendant" or "7-Eleven") accusing Defendant of infringing U.S. Patent No. 9,454,748, entitled "System and Method for Data Management" ("'748 Patent" or "Asserted Patent").   Plaintiff accuses Defendant's mobile application of infringing Claim 7 ("Claim 7" or "Asserted Claim") of the '748 Patent. (5:24-cv-167-RWS, Compl. at ¶¶ 11-16, Dkt. No. 1).

## II.    SUMMARY OF THE ARGUMENT

Abstract ideas are unpatentable. *AI Visualize, Inc. v. Nuance Commc'ns, Inc.*, No. 1:21-97 F.4th 1371, 1377 (Fed. Cir. 2024).  The Asserted Claim of the Asserted Patent is directed to the abstract idea of sending a questionnaire, collecting responses that include location information, and making those responses available over the Internet.

This abstract idea falls under the United States Supreme Court's decision in *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 134 S. Ct. 2347, 2355, 189 L. Ed. 2d 296 (2014).  An idea is not patentable if it meets the two-step test set forth in *Alice*.  The Court's application of the *Alice* test in this case is straightforward.  First, this Court *has already* determined that the Asserted Claim fails under Step 1 of the *Alice* test.  *Fall Line Pat. v. Zoe's Kitchen*, No. 6:18-CV-00407-RWS, 2021 U.S. Dist. LEXIS 251484, at *7-10 (E.D. Tex. 2021)  (determining that the Asserted Claim fails under Step 1 of the *Alice* test).  While this Court's decision in *Zoe's Kitchen* determined that the discovery was necessary to determine Step 2 of the *Alice* test, the Federal Circuit has since held that Step 2 of the *Alice* test can be resolved on a Rule 12(c) motion and have invalidated nearly identical claims as the Asserted Claim.  *See, Beteiro, LLC v. Draftkings Inc.*, 104 F.4th 1350, 1355 (Fed. Cir. 2024).  Likewise, this Court has resolved Step 2 on a Rule 12(c) motion in

1

similar cases having ineligible claims and should do so here.  *See*, *Miller Mendel, Inc. v. City of Anna*, 598 F. Supp. 3d 486, 499 (E.D. Tex. 2022).

Put simply, the Asserted Claim fails as a matter of law pursuant to Supreme Court and Federal Circuit precedent.  Defendant therefore requests that the Court dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted.

## III.    STATEMENT OF THE ISSUE

Under 35 U.S.C. § 101, abstract ideas are ineligible for patentability absent an inventive concept that amounts to significantly more than the abstract idea.  *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 765 (Fed. Cir. 2019) (citing *Mayo Collaborative Services v. Prometheus Lab'ys, Inc.*, 566 U.S. 66, 132 S. Ct. 1289, 182 L. Ed. 2d 321, 72 (2012)).  Here, the Asserted Claim amounts to the abstract idea of sending a questionnaire and collecting responses via the Internet.  The Asserted Claim does not include any inventive concept beyond the aforementioned abstract idea.  Accordingly, the Court should dismiss Plaintiff's Complaint pursuant to Rule 12(b)(6).

## IV.    ALLEGATIONS IN THE COMPLAINT[1]

Plaintiff alleged that the Asserted Patent relates to "data management on remote handheld computers that are 'loosely networked' to servers for the purpose of" collecting location identifying information.  (Compl. at ¶¶ 21-27, Dkt. No. 1).  The "problem" that the '748 Patent purports to resolve, is related to questionnaires and communication with handheld devices, and more particularly, the '748 Patent provides "device-independent tokens" (*Id.* at ¶ 25 (citing '748 Patent at 5:21-32)), transmitting information when a connection is restored (*Id.* at ¶ 26 (citing '748

---

[1] Because this is a Rule 12(b)(6) motion, the Court is required to presume the truth of the Plaintiff's allegation in the complaint.  *Doe AW v. Burleson Cnty.*, 86 F.4th 172, 175 (5th Cir. 2023).

Patent at 5:10-12)), and an integral GPS device (*Id*. at ¶ 27, (citing '748 Patent at 5:33-48, 8:56-61, and 10:55-65)).  Accordingly, the purported goal of the alleged invention is to "improv[e] data management on remote handheld computers that are 'loosely networked' to servers for the purpose of collecting information."  *Id*. at ¶ 21.

The '748 patent has one claim, claim 7, reproduced below:

7. A method for collecting survey data from a user and making responses available via the Internet, comprising:

(a) designing a questionnaire including at least one question said questionnaire customized for a particular location having branching logic on a first computer platform wherein at least one of said at least one questions requests location identifying information;

(b) automatically transferring said designed questionnaire to at least one loosely networked computer having GPS integral thereto;

(c) when said loosely networked computer is at said particular location, executing said transferred questionnaire on said loosely networked computer, thereby collecting responses from the user;

(d) while said transferred questionnaire is executing, using said GPS to automatically provide said location identifying information as a response to said executing questionnaire;

(e) automatically transferring via the loose network any responses so collected in real time to a central computer; and

(f) making available via the Internet any responses transferred to said central computer in step (e).

('748 Patent, Cl. 7).

Claim 7 describes the basic and longstanding practice of collecting questionnaire responses over the Internet.  Furthermore, the claimed method does so using only generic, routine, and conventional computing concepts and equipment like generic computers and a GPS.  The basic claimed concepts are directed to (1) use an integrated GPS unit to automate the collection and use of location identifying information for purposes of customizing a questionnaire; and (2) to

automatically collect location information for transmission to a server so that questions for that location could be generated and sent back to the handheld device.  *Zoe's Kitchen*, 2021 U.S. Dist. LEXIS 251484, at \*11; *see also* Compl. at ¶ 27.

## V.    LEGAL STANDARDS

### A.    Legal Standard for Dismissal Pursuant to Federal Rule of Civil Procedure 12(b)(6)

Under 35 U.S.C. § 101, patentability is a threshold legal issue. *Bilski v. Kappos*, 561 U.S. 593, 130 S. Ct. 3218, 177 L. Ed. 2d 792, 602 (2010).  Accordingly, the § 101 inquiry is properly raised at the pleadings stage and may be resolved via a Rule 12(b)(6) motion "where the undisputed facts, considered under the standards required by [Rule 12(b)(6)], require a holding of ineligibility under the substantive standards of law." *AI Visualize, Inc.,* 97 F.4th 1371, , 1377-78 (quoting *SAP Am. Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1166 (Fed. Cir. 2018)).  Accordingly, issues of patentability can be resolved through a Rule 12(b)(6) motion.  Additionally, the Federal Circuit has held that "claim construction is not an inviolable prerequisite to a validity determination under § 101." *Bancorp Servs. L.L.C. v. Sun Life Assur. Co*., 687 F.3d 1266, 1273 (Fed. Cir. 2012).

### B.    The Law of 35 U.S.C. § 101

The Supreme Court has established a two-part test for patent eligibility.  *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 134 S. Ct. 2347, 2355, 189 L. Ed. 2d 296 (2014).  In determining whether a claim is patent-ineligible, the Court must "first determine whether the claims at issue are directed to a patent-ineligible concept." *Id.*  Claims directed to software inventions do not automatically satisfy this first step of the inquiry.  *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016).  Rather, "the first step in the *Alice* inquiry . . . asks whether the focus of the claims is on [a] specific asserted improvement in computer capabilities . . . or, instead, on . . . an 'abstract idea' for which computers are invoked merely as a tool." *Id.* at 1335-36.

4

If the Court determines that the claims are directed to an abstract idea, it then determines whether the claims contain an inventive concept sufficient to transform the claimed abstract idea into a patent-eligible application. *Alice*, 134 S. Ct. at 2357. An inventive concept is "some element or combination of elements sufficient to ensure that the claim in practice amounts to 'significantly more' than a patent on an ineligible concept." *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1255 (Fed. Cir. 2014). The Court "consider[s] the elements of each claim both individually and as an ordered combination to determine whether the additional elements transform the nature of the claim into a patent-eligible application." *Alice*, 134 S. Ct. at 2355 (internal quotations omitted). Even if each claim element, by itself, was known in the art, "an inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces." *BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016). "The ultimate determination of *Alice* step two… is a question of law that may be 'inform[ed]' by '[u]nderlying factual determinations,' such as 'whether a claim limitation or combination of limitations is well-understood, routine, and conventional.'" *Beteiro, LLC v. Draftkings Inc.*, 104 F.4th 1350, 1357 (Fed. Cir. 2024) (citing *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1290 (Fed. Cir. 2018)).

## VI.    ARGUMENT

The claims of the Asserted Patent are invalid under 35 U.S.C. § 101 because they fail both steps of the *Alice* test. First, the Asserted Claim is directed to the abstract idea of sending a questionnaire and collecting responses via the Internet. Abstract ideas are not eligible for patenting.

Second, none of the claims contain an "inventive concept sufficient to ensure that the patent in practice amounts to *significantly more* than a patent upon the ineligible concept itself." *Alice*, 134 S. Ct. at 2355 (emphasis added). Because the Asserted Patent is not directed to patent eligible subject matter, a threshold legal issue, Plaintiff's claims fail as a matter of law.

5

A.      **The '748 Patent is Invalid Under 35 U.S.C. § 101**

1.      *Alice* **Step 1: The '748 Patent is directed to the abstract idea of sending a questionnaire and collecting responses via the Internet.**

Claim 7 is directed to the abstract idea of sending a questionnaire and collecting responses via the Internet.  To determine whether Claim 7 is directed to an abstract idea, the analysis begins by examining the "focus" of the claim, *i.e.*, its "character as a whole."  *SAP Am., Inc.*, 898 F.3d at 1167.  The goal is to identify the basic concept at the "heart" of the claims.  *See Ultramercial Inc. v. Hulu, LLC*, 772 F.3d 709, 714-15 (Fed. Cir. 2014).  "[M]ethods which can be performed mentally or which are the equivalent of human mental work, are unpatentable abstract ideas – the 'basic tools of scientific and technological work' that are open to all."  *CyberSource Corp. v. Retail Decisions, Inc.,* 654 F.3d 1366, 1372 (Fed. Cir. 2011) (quoting *Gottschalk v. Benson,* 409 U.S. 63, 93 S. Ct. 253, 34 L. Ed. 2d 273, 67 (1972)).

This Court has previously found that Claim 7 is directed to the abstract idea of sending a questionnaire, collecting responses that include location information, and making those responses available over the internet. *Zoe's Kitchen*, 2021 U.S. Dist. LEXIS 251484, at *10.  Claim 7 in *Zoe's Kitchen* is **exactly** the same as the Asserted Claim.  *Compare Zoe's Kitchen*, 2021 U.S. Dist. LEXIS 251484, at *10 *with* Compl. (Dkt. No. 1) ¶ 8 and '748 Patent, Claim 7).  Paragraphs 32-38 of the Additional Allegations Regarding Patentability in the Complaint of *Zoe's Kitchen* are repeated nearly verbatim in the Complaint of the present case.  *Compare Zoe's Kitchen*, 2021 U.S. Dist. LEXIS 251484, Dkt. No. 1 ¶¶ 32-38 *with* Compl (Dkt. No. 1)  ¶¶ 21-27.

This Court provided reasoning in *Zoe's Kitchen*, among others, that Claim 7 "represents routine tasks that could be performed by a human," relying on benefits that come "from the capabilities of a general-purpose computer, rather than the patented method itself."  2021 U.S. Dist. LEXIS 251484, at *9 (citing *eDekka LLC v. 3Balls.com, Inc.*, No. 2:15-CV-541-JRG, 2015 U.S.

6

Dist. LEXIS 125990, at *4 (E.D. Tex. Sept. 21, 2015); *FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1095 (Fed. Cir. 2016)).  Notably, this Court further opined that "people have long collected and transmitted information using questionnaires" including "location identifying information," and that "the need to perform this task automatically is not a unique technical problem."  2021 U.S. Dist. LEXIS 251484, at **9-10.

There is no reason for the Court to deviate from its decision in *Zoe's Kitchen*.  Plaintiff has not pled any new, or additional facts in the Complaint than what they pled in *Zoe's Kitchen*.  Accordingly, because this Court correctly found that the Asserted Claim is directed to an abstract idea in *Zoe's Kitchen*, the Court should likewise find here that the Asserted Claim fails the first step of the *Alice* test.

### 2.     *Alice* Step 2: No inventive concept to transform the abstract idea into patent-eligible subject matter is disclosed.

Because the Asserted Claim of the '748 Patent is directed to an abstract idea, the Court must next analyze whether the Asserted Claim contains an "inventive concept sufficient to transform the claimed abstract idea into a patent-eligible application."  *Alice*, 134 S. Ct. at 2357 (internal quotations omitted).  To be successful at this step of *Alice*, the Asserted Claim "must include additional features" that "must be more than well-understood, routine, conventional activity."  *Ultramercial*, 772 F.3d at 715 (quotation omitted).  Here, the Asserted Claim is generic and does not contain any meaningful limitation that would restrict it to a non-routine, specific application of the abstract idea of the Asserted Claim.

In *Zoe's Kitchen*, the Court determined that under Step 2 of *Alice*, the Plaintiff sufficiently pled that the Asserted Claim recites more than a well-understood, routine, conventional activity. Specifically, the Plaintiff contended that it was unconventional to: (1) use an integrated GPS unit to automate the collection and use of location identifying information for purposes of customizing

7

a questionnaire; and (2) automatically collect location information for transmission to a server so that questions for that location could be generated and sent back to the handheld device. *Zoe's Kitchen*, Dkt. No. 1 ¶ 38. This Court stated that "Plaintiff has pleaded an unconventional use that is not contradicted by the face of the '748 patent," referring to these "specific uses of conventional components, **like an integral GPS device**, that are not well-understood, routine, and conventional." *Zoe's Kitchen*, 2021 U.S. Dist. LEXIS 251484, at *12-13 (emphasis added).

As previously noted, the original complaint filed in *Zoe's Kitchen* pled "Additional Allegations Regarding Patentability" that listed problems and identified "improvements" to data management on remote handheld computers, which is repeated nearly verbatim in the Complaint of the present case.[2] 2021 U.S. Dist. LEXIS 251484, Dkt. No. 1 ¶¶ 32-38. The Complaint in *Zoe's Kitchen* identified each claim in the '748 patent that reflected these improvements pled by the Plaintiff, only citing to the Asserted Claim in paragraph 38 identifying the GPS device as an advance over prior art that was not well-understood, routine, and conventional. *Id.* In *Zoe's Kitchen*, this Court also referenced the complaint's allegations that use of an integral GPS device was not well-understood, routine, or conventional at the time of the 2002 priority date as "concrete allegations." 2021 U.S. Dist. LEXIS 251484, at *12 (citing *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1128 (Fed. Cir. 2018)). Now, recent case law renders the Asserted Claim and its GPS device having a priority date of 2002 well-understood, routine, and conventional. Moreover, the other allegations fail to plead a claim for which relief can be granted because the Asserted Claim is limited to conventional activities and fails to capture the uses or improvements pled by the Plaintiff.

---

[2] Dkt. No. 1 ¶¶ 21-27.

8

a.      As in *Beteiro,* GPS-Related Limitations Here Are Conventional
and Do Not Add Significantly More

Since this Court's decision in *Zoe's Kitchen*, the law has changed.  First, with respect to the (1) integral GPS unit, the Federal Circuit has recently found that such an integral GPS device as recited by the Asserted Claim and disclosed by the '748 Specification is well-understood, routine, and conventional as a matter of law.  *Beteiro, LLC v. Draftkings Inc.,* 104 F.4th 1350, 1355 (Fed. Cir. 2024) (citing *Aatrix*, 882 F.3d at 1125).  In *Beteiro*, the patentee owned at least U.S. Patent No. 9,965,920 ("the '920 patent") and U.S. Patent No. 10,255,755 ("the '755 patent"), where claim 2 of the '755 patent was deemed representative for purposes of evaluating the issue of patentable subject matter.  Claim 2 of the '755 patent recited "wherein the… **communication device comprises a global positioning device…**, wherein the bet message contains**… information regarding the position or location of the… communication device**."  *Id.* at 1353-54 (emphasis added).  The Federal Circuit further noted that the '920 specification only described the global positioning device (GPS) once, and that the earliest claimed priority date of the *Beteiro* patents was 2002.  *Id*. at 1357.

Here, the '748 patent has nearly identical disclosure of GPS to the '920 patent in *Beteiro.* That is, the '748 patent has a priority date of 2002, the same as the *Beteiro* patents.  The '748 patent merely mentions the "GPS" twice, one more time than '920 patent specification and in the same manner.  *Compare* '748 Patent at 5:48 and 10:67 *with* '755 patent at 80:24-38.  For the same reasons, the '748 patent should have the same fate of invalidity as claim 2 of the '755 patent in *Beteiro*.  Specifically, the Federal Circuit found that claim 2 was invalid for failing Steps 1 and 2 of the *Alice* test as a matter of law.  The Federal Circuit reasoned that the lack of disclosure regarding the GPS "can only plausibly mean that the patent applicant drafted the specification understanding that a person of ordinary skill in the art knew what GPS was, how to include it on a

9

mobile device, and that using it for the purposes disclosed in the patent was routine, conventional, and well-understood." *Id.*  Therefore, the GPS of the Asserted Claim is also routine, conventional, and well-understood as a matter of law.

Furthermore, the GPS of the Asserted Patent can be contrasted with the method of using GPS in *SiRF Tech., Inc. v. Int'l Trade Comm'n,* 601 F.3d 1319, (Fed. Cir. 2010).  In *SiRF Tech.,* the Federal Circuit found that the method of claims at issue could not be performed without the use of the GPS receiver, which placed a "meaningful limit" on the scope of the claims rather than a "function solely as an obvious mechanism for permitting a solution to be achieved more quickly." *Id.* at 1332-33.  The claims at issue in *SiRF Tech.* specifically recited "calculating an absolute position of a GPS receiver," updating an "estimate of position of the GPS receiver," and receiving "a plurality of satellite signals," such that use of a GPS receiver was found to be "essential to the operation of the claimed methods." *Id*.  In contrast, the Asserted Claim and '748 Specification as a whole do not place any meaningful limit on the scope of the integrated GPS, and instead recites the GPS solely as "an obvious mechanism for permitting a solution to be achieved more quickly" in lieu of manual input. *Id*.  Further still, the well-understood functionality of a GPS as of the 2002 priority date of the '748 Patent is highlighted by the dense description through the Global Locate patents in *SiRF Tech.* having a priority date of Nov. 17, 2000. *See*, U.S. Patent No. 6,417,801, Cover Page.  Accordingly, application of the GPS of the Asserted Claim is well-understood, routine, and conventional as a matter of law.

Second, both uses employ location identifying information (1) for purposes of customizing a questionnaire; and (2) for transmission to a server so that questions customized for that location could be generated and sent back to the handheld device.  As previously noted, this Court found in Step 1 of *Alice* that "people have long collected and transmitted information using

10

questionnaires" including "location identifying information," and that "the need to perform this task automatically is not a unique technical problem." *Zoe's Kitchen*, 2021 U.S. Dist. LEXIS 251484, at \*9-10.  Put simply, collecting and transmitting location identifying information to customize a questionnaire is not significantly more than what is well-understood, routine and conventional.

Furthermore, since this Court's decision in *Zoe's Kitchen*, this Court has found a claim requiring "generating a suggested reference list of one or more law enforcement agencies based on an applicant residential address" to be well-understood, routine, conventional, and invalid as a matter of law.  *Miller Mendel, Inc. v. City of Anna*, 598 F. Supp. 3d 486, 499 (E.D. Tex. 2022) (citing *Brit. Telecomm. PLC v. IAC/InterActive Corp.,* 381 F. Supp. 3d 293, 313 *(D. Del. 2019), aff'd,* 813 F. App'x 584 (Fed. Cir. 2020)).  Specifically, this Court found that "there is nothing inventive about the generation and transmission of a list of information sources based on user location… [n]or do the claims recite any novel type of information or a new way of gathering, cataloguing, or transmitting that information."  The Asserted Claim also does not recite any novel type of information and is similarly limited to location identifying information.  Cataloguing location information with a questionnaire[3] instead of a list is also not novel, as "creat[ing] and customiz[ing] electronic documents… to be sent… and returned" is well-understood, routine, and conventional as a matter of law.  *Id.* at 489.  Additionally, it has previously been established herein that an integrated GPS unit is a conventional device, and merely applying this device to transmit location identifying information for customizing an electronic form (e.g., questionnaire) is well-understood, routine, and conventional.

---

[3] This Court previously construed, and Plaintiff currently agrees "questionnaire" to be construed as "a program or form that includes a question or statement, which calls for a response. *Zoe's Kitchen*, No. 6:18-CV-00407-RWS, Dkt. No. 228 at 8.

Third, with respect to (2) **automatically collecting** location identifying information for transmission to a server so that questions for that location could be generated and **sent back to the (loosely connected) handheld device**, the Asserted Claim provides nothing more than well-understood, routine, and conventional activity.  The Order in *Zoe's Kitchen* credited Plaintiff's Complaint alleging that in 2002, then-existing handheld devices were ill-equipped to collect information when dealing with intermittent networks.  *Zoe's Kitchen*, 2021 U.S. Dist. LEXIS 251484, at \*13 (citing Dkt. No. 1 ¶ 33; Dkt. No. 137 at 3-4).  The Order also found that the Plaintiff pled an unconventional use by pleading "specific improvements in the prior art resolved by the claimed invention and specific uses of conventional components" to address said "technical problems with the prior-art remote handheld computers."  *Id.* at \*13-14 (citing Dkt. No. 1 ¶ 34).  However, the Asserted Claim only recites a "loosely connected device" and "loose network," which merely limits the Asserted Claim to a field of use.[4]  Even if the "loose network" is construed to be an "intermittent network," this limitation only limits the Asserted Claim's field of use.

b.    Plaintiff's Current Pleading Adds Nothing More to Its Prior Pleading in *Zoe's Kitchen* to Distinguish *Beteiro*

The Complaint also fails to plead how the problems with this "loose network" are resolved by any one or combination of limitations in the Asserted Claim, because such a resolution is conventional or not captured by the Asserted Claim.  With respect to issues of network availability and intermittent networks, the Complaint asserts that the '748 patent "enables a reduction to 'the load on a communication channel of finite bandwidth.'"  Dkt. No. 1 ¶ 26 (citing '748 Patent at 4:36-39).  While using an available network where "any communication connection is available between devices wishing to communicate, **network transmissions occur normally**, in real time."

---

[4] It has been established by the Supreme Court that "[l]imiting an abstract idea to one field of use or adding token postsolution components d[oes] not make the concept patentable."  *Bilski v. Kappos*, 561 U.S. 593, 612, 130 S. Ct. 3218, 130 S. Ct. 3218, 177 L. Ed. 2d 792, 612 (2010)

12

*Id.* (citing '748 Patent at 5:7-10) (emphasis added). The Complaint provides an approach as an alleged improvement when a network is not available to allegedly reduce the load on a communication channel. *Id.* This approach requires that "if a network connection is unavailable at that moment, the information is temporarily stored in the device and later transmitted when the connection restored." *Id.* (citing '748 Patent at 5:10-12). To accomplish the approach, the '748 Specification further teaches that "transmission will be automatically delayed until connection 34 is restored" in multiple examples. '748 Patent at 9:65-67, 10:6-8.

This approach pled by the Plaintiff is the same conventional approach taken by a human seeking to send information (e.g., electronic document, e-mail, serving a pleading, etc.) over a wireless intermittent network (e.g., cellular network, WiFi). That is, a human can send an e-mail over an available WiFi network via a networked device according to normal network transmissions (e.g., an available network). However, if the device is unconnected to the WiFi network (e.g., while traveling) or the WiFi network is currently unavailable, the human must necessarily wait until a WiFi network connection is restored to send the e-mail. In fact, this approach also applies to humans who send mail via the United States Post Office (USPS), where the human provides a letter to the USPS during hours of availability (e.g., normal transmissions). However, if the USPS is closed for a date or time, the human must save their letter and wait until the USPS re-opens to mail their letter.[5] There is nothing significantly more than what is well-understood, routine, and conventional in this "approach" pled by the Plaintiff.

---

[5] The "approach" of waiting until a network is available to transmit information is the same human behavior prescribed by F.R.C.P. 6(a)(3): *Inaccessibility of the Clerk's Office.* Unless the court orders otherwise, if the clerk's office is inaccessible:

   (A) on the last day for filing under Rule 6(a)(1), then the time for filing is extended to the first accessible day that is not a Saturday, Sunday, or legal holiday; or
   (B) during the last hour for filing under Rule 6(a)(2), then the time for filing is extended to the same time on the first accessible day that is not a Saturday, Sunday, or legal holiday.

Furthermore, the "automatic transfer," automatic collection, and an automated "approach" cannot save the Asserted Claim from invalidity under § 101, even under a narrow claim construction.   For example, this Court previously construed "automatic transfer" to mean "transferring that is not initiated upon direction of the user." *Zoe's Kitchen*, No. 6:18-CV-00407-RWS, Dkt. No. 228 at 18.  By implication and as taught by the '748 Specification, the transfer of location identifying information and questionnaire responses is to be optionally performed programmatically by one of at least the server or handheld device of the Asserted Claim.  That is, the Asserted Claim at most requires that the approach for sending electronic documents conventionally performed by humans is instead applied by generic computer components, such as a conventional handheld device and the conventional integrated GPS unit.  Even under narrow constructions of the Asserted Claim, the Asserted Claim provides no more than well-understood, routine, and conventional activities related to "automatic transfer" with a generic device to "apply it," which does not make the Asserted Claim patent-eligible.  *Alice*, 134 S.Ct. 2347, 2357 (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 132 S. Ct. 1289, 182 L. Ed. 2d 321, 72 (2012)).

   c. Plaintiff Relies On Specific Distinctions Not Found In The Asserted Claim.

Fourth, the Complaint highlights the background of the '748 Specification, disparaging then-existing remote handheld computers and related technology.  Dkt. No. 1 ¶ 22.  The Complaint pled problems related to these then-existing handheld computers involved operating systems for these handheld computers, compatibility issues between remote computing devices, development and deployment of changes to programs, and network availability.  *Id.* (citing '748 Patent at 1:45-2:31, 2:41-64, 3:1-7, and 3:64-4:1).  However, any purported patent-eligible improvements to such particular problems must be "captured in the claims." *Berkheimer v. HP Inc.*, 881 F.3d 1369 (Fed.

Cir. 2018).  The Asserted Claim is not directed to any improvement to address **any** of the problems discussed by the Complaint or the '748 Specification.

As explained above, the "automated approach" has to be extrapolated from the Asserted Claim by narrowly construing terms "automatic" and "loosely connected" only to arrive at a conventional, well-understood, and routine process.  If taken under its plain and ordinary meaning, for example, the Asserted Claim does not capture the specific use of the automated approach pled by the Plaintiff for merely reciting "loose" connections and "automatically transferring."  Further, even under the Plaintiff's previously and currently agreed upon construction, the automated approach cannot confer an "improvement" pled by the Plaintiff because the automated "approach" is well-understood, routine, and conventional.

With respect to issues of compatibility and deployment of programs, the Complaint explains that issues occur "when the program running on the remote handheld computer needed changing, developers must first make the change on a development system and then re-transfer the entire program to each target device."  Dkt. No. 1 ¶ 24 (citing '748 Patent at 3:7-10).  The Complaint further explains that to overcome compatibility issues, the '748 patent uses "tokens." *Id.* at ¶ 25.  Specifically, the Complaint explains that the "device-independent tokens… and the creation of tokenized questionnaires" obviate the need to "recompile and reload a software package onto a handheld computer" to "make changes" automatically.  *Id.*  (citing '748 Patent at 5:21-32). However, the Asserted Claim does not recite tokens, device-independent tokens, or a tokenized questionnaire.  The Asserted Claim also does not recite tokenizing a questionnaire, or any step related to this alleged improvement.  Rather, the Asserted claim recites designing, automatically transferring (without user interaction), and executing the questionnaire, as well as automatically transferring and making available responses to the questionnaire.  Therefore, the Asserted Claim

15

is not directed any *specific* improvement that addresses the alleged compatibility issues, such as a token as taught by the '748 Specification.[6]

Furthermore, even a narrow construction of "executing the questionnaire" as recited by the Asserted Claim does not capture the specific uses or improvements related to tokens as pled by the Plaintiff.  For example, executing the questionnaire and construing an "executable" to be required by the Asserted Claim at most construes the questionnaire to be "'of, pertaining to, or being a program file that can be run' and includes JAVA and markup languages (XML, HTML, JSON, etc.)."  *Zoe's Kitchen*, No. 6:18-CV-00407-RWS, Dkt. No. 228 at 7.  That is, even under the Plaintiff's previously and currently agreed upon construction of the Asserted Claim, the Asserted Claim still does not capture a "token."  Therefore, the Asserted Claim does not capture the specific uses or improvements pled by Plaintiff regarding a "token."  Rather, the questionnaire is merely of, pertaining to, or is an electronic program file (e.g., XML, HTML, JSON, etc.) of a conventional and well-understood questionnaire.[7]  Executing, by providing an electronic document (e.g., electronic program file such as XML) with location identifying information, and transmitting the electronic document for customization has been shown to be well-understood, routine, and conventional.  *See, Brit. Telecomm.*, 381 F. Supp. 3d 313.

To the extent that the Complaint asserts that an integral GPS device provides a specific improvement, this alleged improvement is in need of a particular problem.  Dkt. No. 1 ¶ 27.  As

---

[6] The Federal Circuit held that a claim "directed to a specific implementation of a solution to a problem in the software arts" can avoid being doomed as patent-ineligible, where the Federal Circuit found a claim valid for being "specifically directed to a self-referential table for a computer database" rather than "any form of storing tabular data."  *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1334-37 (Fed. Cir. 2016)

[7] This Court previously construed, and Plaintiff currently agrees "questionnaire" to be construed as "a program or form that includes a question or statement, which calls for a response.  *Zoe's Kitchen*, No. 6:18-CV-00407-RWS, Dkt. No. 228 at 8.

previously explained, the '748 Specification only references the acronym "GPS" twice and does not disclose how to create an "integral GPS device" or what benefits could be conferred by using a GPS.  *See* '748 Patent at 5:48 and 10:57.  In both instances where the GPS is referred to in the '748 Specification, the handheld computer is optionally equipped with the GPS operable to provide location or position information.  *Id.*  This optional and conventional embodiment does not address any of the purported problems described by the Complaint or the '748 Specification.  Instead, the '748 Specification only describes employing conventional GPS technology to provide the location as an alternative to a user providing the location, which can again be done manually.  *See* '748 Patent at 3:38-47.  Using the GPS to automatically provide the location as recited by the Asserted Claim, or any of the recited components "to increase the speed or efficiency of the process does not confer patent eligibility on an otherwise abstract idea."  *Intell. Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1370 (Fed. Cir. 2015).  Further, the absence of an improvement conferred by the GPS is acknowledged by the Complaint only asserting that combination of the GPS to perform routine functions with other conventional components is unconventional.  Dkt. No. 1 ¶ 27.

> d.  Plaintiff Fails To Establish How The Conventional, Routine, and Well-Understood Components Amount To An Unconventional Combination.

Fifth, the Asserted Claim is limited to purely functional and generic computer components (a "computer platform," a "loosely networked computer," a "central computer", and the "Internet") and functions ("designing a questionnaire," "transmitting," "executing," "branching logic," and "making available" questionnaire data), which are patent-ineligible.  *See, e.g., Alice,* 134 S. Ct. at 2359-60; *see also Intell. Ventures I LLC v. Symantec Corp.,* 838 F.3d 1307, 1315-16 (Fed Cir. 2015) (a general method of screening emails on a generic computer), *TLI Communs. LLC v. AV Auto., L.L.C. (In re TLI Communs. LLC Pat. Litig.),* 823 F.3d 607, 612 (Fed. Cir. 2016) (gathering

and analyzing information using conventional techniques and displaying the result), and at least *Versata Dev. Grp., Inc. v. SAP Am., Inc.,* 793 F.3d 1306, 1334 (Fed. Cir. 2015) (a commonplace business method being applied on a general purpose computer).

As explained above, the Federal Circuit found an "integral GPS unit" to be well-understood, routine, and conventional under nearly identical circumstances, such that the GPS unit is yet another generic computer component. *Beteiro*, 104 F.4th at 1355. The function of transferring conventional types of data such as "location identifying information" using conventional components is not made significantly more for the combination of "automatic" (e.g., by a computer) performance over a "loose network." The abstract idea of sending a questionnaire, collecting responses that include location information, and making those responses available over the internet is a result of combining these generic computer components to perform their intended and generic functions as explained above. The only "inventive concepts" or "specific uses" pled by the Plaintiff are not captured by the Asserted Claim, or are shown to be well-understood, routine, and conventional.

Under its broadest reasonable interpretation, or even narrow constructions agreed upon by the Plaintiff, the Asserted Claim does not provide any elements individually, or in combination, that provide significantly more than what is well-understood, routine, and conventional. The Asserted Claim does not provide any specific use or improvement over the prior art that has been pled by the Complaint. There exists no issue of fact, such that this Court can reach a conclusion of invalidity using only this Court's previous Order, this Court's previous decisions, the Federal Circuit decision in *Beteiro*, and the '748 disclosure (and lack thereof). In fact, "no amount of creative pleading" can transform the Asserted Claim into patent-eligible subject matter. *Id.* at 1358. Asserted Claim 7 should be found invalid for reciting patent ineligible subject matter.

18

## VII.   CONCLUSION

For all the foregoing reasons and pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant respectfully requests that this Court grant Defendant's Motion to Dismiss Fall Line's Complaint for failure to state a claim upon which relief can be granted.  Because leave to amend would be futile, Defendant requests the Court's dismissal with prejudice.

Dated: February 7, 2025

Respectfully submitted,

VORYS, SATER, SEYMOUR AND PEASE LLP

*/s/ Jason Mueller*
Jason Mueller [TBN 24047571]
Lead Counsel
Lauren A. Kickel [TBN 24132799]
909 Fannin Street, Suite 2700
Houston, TX  77010
T: 713.588.7000
F: 713.588.7050
Email: jmueller@vorys.com
Email: lakickel@vorys.com

Aaron M. Williams [OBN 0090319]
200 Public Square, Suite 1400
Cleveland, Ohio 44114
T: (216) 479-6180
F: (216) 479-6180
Email: amwilliams@vorys.com

Michael V. Messinger [448434DC]
1909 K Street NW, Suite 900
Washington, D.C.  20006
T: 202.467.8800
Email: mvmessinger@vorys.com

ATTORNEYS FOR DEFENDANT
7-ELEVEN, INC.

## CERTIFICATE OF SERVICE

On this 7th day of February 2025, I hereby certify that a true and correct copy of the foregoing was filed via the Court's CM/ECF system, which will effect service on all counsel of record.

*/s/ Jason Mueller*
Jason Mueller

20